1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11  GENERAL INSURANCE COMPANY OF
    AMERICA, a Washington
12  corporation; FIRST NATIONAL
    INSURANCE COMPANY OF AMERICA,
13  a Washington corporation; and
    SAFECO INSURANCE COMPANY OF
14  AMERICA, a Washington
    corporation,
15                                      NO. CIV. S-02-1020 WBS PAN
              Plaintiffs,
16
         v.                             MEMORANDUM AND ORDER
17                                      RE: MOTION FOR RELIEF FROM
                                        JUDGMENT
18  CORPORATE CONTROL, INC., a
    California corporation; HI-
19  VOLTAGE WIRE WORKS dba POWER
    PROVIDERS, a California
20  corporation; UNITED UTILITIES,
    INC., a California
21  corporation; SUPPLY SOURCE,
    INC. dba EXTRA EQUIPMENT, a
22  California corporation; TRADE
    TECH. INC., a California
23  corporation; STEVE K. ZINNEL,
    an individual; MICHELLE
24  ZINNEL, an individual; ZINNEL
    FAMILY TRUST DATED DECEMBER
25  14, 1998 through its trustee,
    STEVE K. ZINNEL; and DOES 1
26  through 100, inclusive,

27            Defendants.

28                         ----oo0oo----

                              1

1          Defendant Steve K. Zinnel moves this court for relief

2  from a judgment plaintiffs obtained against him in this action on

3  the ground that the judgment has allegedly been substantially

4  satisfied by Swinerton Walberg Co. ("Swinerton"), a nonparty.

5  The court experiences something akin to <u>déjà</u> <u>vu</u> as it realizes

6  that this is the third time within the history of this case that

7  Mr. Zinnel has argued that he is entitled to offset any judgment

8  against him with payments on a contract balance plaintiffs

9  allegedly received from Swinerton.  (<u>See</u> June 23, 2004 Reissued

10 Mem. & Order Re: Pls.' Mot. for Summ. J. ("June 23, 2004 Reissued

11 Mem. & Order") at 36 n.24; August 26, 2004 Mem. & Order Re: Mot.

12 for Reconsideration (Pls.' Claims) at 20)(addressing same

13 argument).  This latest reincarnation of Mr. Zinnel's argument is

14 no more persuasive the third time around.

15 I.   <u>Factual and Procedural History</u>

16          On or about May 10, 2002, plaintiffs filed an action

17 against Mr. Zinnel and his codefendants (collectively

18 "defendants"), alleging claims for (1) breach of contract; (2)

19 exoneration/<u>quia</u> <u>timet</u>; (3) injunctive relief; (4) specific

20 performance; (5) statutory indemnity; and (6) equitable

21 subrogation.  Thereafter, on April 12, 2004, plaintiffs filed a

22 motion for summary judgment against all defendants seeking, among

23 other things, $2,799,642.51 in contract damages from defendants.

24 (<u>See</u> June 23, 2004 Reissued Mem. & Order at 36 n.24).  Because

25 genuine issues of material fact remained as to defendants'

26 liability for some of the requested damages, the court found

27 defendants jointly and severally liable for only $1,192,509.28 in

28 contract damages at the summary judgment stage, though additional

2

1 relief was granted on a separate claim.  (See id. at 36-37).

2          Some of the contract damages for which the court found

3 defendants liable were a result of losses plaintiff General

4 Insurance Company of America ("General Insurance") incurred from

5 issuing performance and payment bonds on behalf of defendant Hi-

6 Voltage Wire Works dba Power Providers ("Power Providers").  (See

7 id. at 7).  Before issuing these bonds, plaintiffs had entered

8 into an agreement with defendants whereby defendants agreed to

9 indemnify plaintiffs for any losses incurred from issuing the

10 bonds.  (June 23, 2004 Reissued Mem. & Order at 2-4).  These

11 bonds related to a contract Power Providers had entered into with

12 Swinerton to perform electrical work on the Embassy Suites Hotel

13 in Sacramento, California ("Embassy Suites Project").  (Id. at 7).

14          In a declaration submitted in opposition to plaintiffs'

15 motion for summary judgment, Mr. Zinnel stated that "[a]s of

16 November 28, 2001[,] Power Providers had been paid $962,656.20 by

17 Swinerton on the Embassy Suites Hotel project and the contract

18 had an unpaid balance of $1,180,244.80."  (Zinnel Decl. in Supp.

19 of Zinnel's Opp. to Pls.' Mot. for Summ. J. ¶ 17)(capitalization

20 omitted).  However, after Swinerton allegedly failed to pay Power

21 Providers for some other work on the Embassy Suites Project,

22 Power Providers stopped work on the project on or about December

23 26, 2001.  (See id. ¶¶ 23-24).  General Insurance then took over

24 and completed the project as it was authorized to do by contract

25 and incurred $1,915,478.05 in losses from the bond.  (See June

26 23, 2004 Reissued Mem. & Order at 7, 30).  Defendants' refusal to

27 honor their agreement to indemnify plaintiffs for those losses

28 led plaintiffs, in part, to file their motion for summary

3

1 judgment.

2      In opposing that motion, Mr. Zinnel referenced the

3 aforementioned $1,180,244.80 balance on the contract between

4 Swinerton and Power Providers for work on the Embassy Suites

5 Project and some additional outstanding balances on other

6 contracts.  He stated that plaintiffs "provide[d] no credit for

7 the $1,301,083.68 cumulative balance uncollected on the

8 contracts" and produced a schedule summarizing this information.

9 (See Zinnel Decl. in Supp. of Zinnel's Opp'n to Pls.' Mot. for

10 Summ. J. ¶ 70, Ex. 26 ).  However, because Mr. Zinnel failed to

11 explain how this balance affected or offset plaintiffs' specific

12 claims, the court found this evidence unpersuasive.  (See June

13 23, 2004 Reissued Mem. & Order at 36 n.24; see also August 26,

14 2004 Mem. & Order Re: Mot. for Reconsideration (Pls.' Claims) at

15 20(explaining court's reasoning in more detail)).

16      The court then went on to determine that defendants

17 were jointly and severally liable to plaintiffs for $406,884.81

18 in losses plaintiffs incurred from issuing the bonds on the

19 Embassy Suites Project.  (See June 23, 2004 Reissued Mem. & Order

20 at 29-32, 32 n.18).  However, the court refused to find

21 defendants liable, at the summary judgment stage, for the

22 remainder of the $1,915,478.05 in losses plaintiffs claimed on

23 the same bonds because there were genuine issues of material fact

24 as to whether those particular losses were incurred in good

25 faith.  (See id. at 31-32, 32 n.18).  The remainder of the

26 $1,192,509.28 in contract damages for which the court found

27

28

4

1  defendants liable arose from bond losses on other projects.[1]

2          On or about July 16, 2004, Mr. Zinnel filed a motion

3  for reconsideration of the summary judgment order.  In his

4  memorandum of points and authorities in support of that motion,

5  Mr. Zinnel again argued that the alleged uncollected balances

6  from various projects should offset the judgment by

7  $1,301,083.68.  (See Zinnel's Mem. of P. & A. in Supp. of Mot.

8  for Reconsideration of Summ. J. at 8).  That $1,301,083.68 again

9  included $1,180,244.80 allegedly owed on the Embassy Suites

10 Project.  (See id.).

11         The court denied Mr. Zinnel's motion for

12 reconsideration on August 26, 2004.  In doing so, the court noted

13 that it had considered the information contained in Mr. Zinnel's

14 schedule.  However, the court determined that the information in

15 the schedule failed to create a genuine issue of material fact

16 because Mr. Zinnel had not presented any evidence indicating that

17 the amounts listed on the schedule should offset specific claims

18 paid by plaintiffs on the relevant bonds.  (See August 26, 2004

19 Mem. & Order Re: Mot. for Reconsideration (Pls.' Claims) at 20).

20         On October 26, 2004, the court entered a final judgment

21 that disposed of all claims to all parties.  (See October 26,

22 2004 Judgment).  Mr. Zinnel appealed the October 26, 2004

23 judgment on or about November 23, 2004. (See  Def. Zinnel's Index

24 of Attached Exs. in Supp. of Steve K. Zinnel's Mot. for Relief

25 from J. & Mot. for Stay of Execution of J., Ex. 3 (Def. & Cross-

26

27         [1]   See id. at 25, 28, 33(noting respective losses of
$120,846.74, $38,000, $58,288.64, $560,989.09, and $7,500 on
28 other bonds issued for work on other projects).

Def. Steve K. Zinnel's Notice of Appeal)).

Thereafter, Mr. Zinnel reviewed the billings and payments Power Providers received on the Embassy Suites project again. Based on this review, Mr. Zinnel declares that he prepared a schedule titled "Balance to collect on contract schedule as of July 2002." In that schedule, Mr. Zinnel represents that Swinerton paid Power Providers $962,656 on a $2,142,901 contract leaving a balance of $1,180,245 on the contract. Mr. Zinnel then states that "[his] research leads [him] to believe that plaintiffs have collectively collected $1,180,245." (Zinnel Decl. ¶ 4; Zinnel's Index, Ex. 11 (Contract Schedule)). Based on the schedule he prepared and the inferences he draws from that schedule, Mr. Zinnel now files this motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(5). If that relief is denied, Mr. Zinnel moves the court, on unspecified grounds, to order plaintiffs to provide copies of payments he believes they received from Swinerton on the Embassy Suites project.[2]

---

[2] Mr. Zinnel also objects to plaintiffs' oppositions and certificates of service on the ground that they were not properly served. (See Steve K. Zinnel's Objection to Pls.' Certificates of Service & Opp'ns at 1,4). He contends that, contrary to the statements in plaintiffs' certificates of service, he was never personally served with the relevant documents on June 13, 2005, but rather that he found them on the front porch of his personal residence on June 14, 2005. (Zinnel Decl. in Supp. of Objections ¶¶ 5,7).

Mr. Zinnel's objection is unavailing. Local Rule 5-135 allows pros se litigants, like Mr. Zinnel to be "conventionally served." "Conventional service" is defined as service "accomplished by traditional means (either personal or mailing) pursuant to Fed. R. Civ. P. 5(b)(2)(A)-(C). . . ." Local Rule 1-101. Federal Rule of Civil Procedure 5(b)(2)(B) allows for service by mail and states that such service is complete on mailing. Mailing can be accomplished by messenger service. See

1   II.   <u>Discussion</u>

2           Federal Rule of Civil Procedure 60(b)(5) provides that

3   "the court may relieve a party . . . from a final judgment . . .

4   [if] the judgment has been satisfied, released, or discharged . .

5   . ."  Fed. R. Civ. P. 60(b)(5).  Relief under Rule 60(b) is,

6   however, considered extraordinary and granted only in exceptional

7   circumstances.  <u>Sellers v. Mineta</u>, 350 F.3d 706, 716 (8th Cir.

8   2003).  A party seeking relief from a final judgment based on

9   satisfaction of the judgment bears the burden of proving that the

10  judgment has been satisfied.  <u>Tungseth v. Mutual of Omaha Ins.</u>

11  <u>Co.</u>, 43 F.3d 406, 409 (8th Cir. 1994).  A party may not seek

12  relief from judgment simply to relitigate matters settled by the

13  original judgment.  <u>Donovan v. Sovereign Sec., Ltd.</u>, 726 F.2d 55,

14  60 (2d Cir. 1984).

15          Mr. Zinnel has failed to provide the court with any

16  evidence to establish that plaintiffs' judgment has been

17  satisfied other than the schedule of payments he created after

18  reviewing billings and payments Power Providers received from

19  Swinerton.  This evidence is not enough to meet Mr. Zinnel's

20  burden on this motion.

21

22  <u>In re: William B. Kessler, Inc.</u>, 29 B.R. 358 (S.D.N.Y. Bankr.
    1983)(finding delivery by messenger service to be proper).
23

24      Mr. Zinnel does not challenge the sworn statements in both
    of plaintiffs' certificates of service to the effect that the
    documents were placed in a properly addressed envelope and served
25  on him by messenger service on June 13, 2005. (<u>See</u> Pls.' June
    13, 2005 Certificate of Service at 2-3; Pls.' June 14, 2005 Am.
26  Certificate of Service at 2-3).  Nor does he deny that he
    received the relevant documents.  Instead, he freely admits he
27  found them on his porch on June 14, 2005. (Zinnel Decl. in Supp.
    of Objections ¶ 5).  Therefore, Mr. Zinnel's objections to
28  service are overruled.

1   At best, Mr. Zinnel's evidence suggests that Swinerton

2   owed Power Providers (one of Mr. Zinnel's codefendants)

3   $1,180,245 on a contract for work on the Embassy Suites Project.

4   This suggestion is itself dubious because Power Providers ceased

5   work on the project such that General Insurance was obliged to

6   take over the project.  (See Reissued Mem. & Order at 7, 30).

7   But whatever inference Mr. Zinnel's evidence raises as

8   to whether Swinerton owed Power Providers under the contract, it

9   does not establish that plaintiffs collected $1,180,245 from

10   Swinerton.  Mr. Zinnel's declaration that "[his] research leads

11   him to believe that plaintiffs have collectively collected [the]

12   $1,180,245" is unavailing.  (Zinnel Decl. ¶ 4).  The only

13   research Mr. Zinnel cites to support this belief is his review of

14   the billings and payments Power Providers received from

15   Swinerton.  (See Zinnel's Index, Ex. 11 (Contract Schedule)).  As

16   explained in two previous orders, the fact that Swinerton may

17   have owed Power Providers money does not establish that

18   plaintiffs recovered that money or that their judgment against

19   Mr. Zinnel was somehow satisfied.  (See June 23, 2004 Reissued

20   Mem. & Order at 36 n.24; Mem. & Order Re: Mot. for

21   Reconsideration (Pls.' Claims) at 20).  A Rule 60(b) motion is

22   not meant to be an opportunity for Mr. Zinnel to make a twice-

23   rejected argument for a third time to the same court in yet

24   another effort to relitigate the same matter.  See Donovan, 726

25   F.2d at 60.  Because Mr. Zinnel has once again failed to

26   demonstrate that plaintiffs' judgment has been satisfied, his

27   request for relief under Rule 60(b)(5) must be denied.  See

28   Tungseth, 43 F.3d at 409.

8

1          Mr. Zinnel cites no authority, other than "equity and

2 fairness," for his alternative request for a court order

3 compelling plaintiffs to produce documentation of payments

4 received from Swinerton for work on the Embassy Suites Project.

5 (See Def. Steve Zinnel's Reply to Pls.' Opp'n at 8).  Equity and

6 fairness are not in Mr. Zinnel's favor.  Rather, both would be

7 offended by rewarding Mr. Zinnel's needless relitigation of this

8 issue with an order compelling plaintiffs to produce documents so

9 that Mr. Zinnel could relitigate the matter again for a fourth

10 time.  Furthermore, plaintiffs contend that they have not found

11 any legal authority for compelling them to produce these

12 documents postjudgment.  (See Pls.' Opp. to Def. Steve K.

13 Zinnel's Mot. for Relief from J. at 5).  Nor has the court found

14 any such authority.  Because equity disfavors this request and

15 because the court has no apparent legal authority to grant it,

16 this request is also denied.

17          If Mr. Zinnel continues to disagree with this court's

18 judgment, his remedy is to appeal to the United States Court of

19 Appeals for the Ninth Circuit, not to continue to seek

20 reconsideration of the judgment in this court.

21          IT IS THEREFORE ORDERED that defendant Steve K.

22 Zinnel's motions for relief from judgment and for a court order

23 compelling plaintiffs to produce documentation of payments

24 ///

25 ///

26 ///

27 ///

28 ///

9

1 | received from Swinerton be, and the same hereby are, DENIED.

2 | DATED: June 27, 2005

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10